E-FILED
Wednesday, 25 June, 2014  04:44:35 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| K. M., a minor, by | ) |
| mother and next friend of | ) |
| BRANDI MCGUIRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. |
| | ) |
| SHERRARD COMMUNITY UNIT | ) |
| SCHOOL DISTRICT NUMBER 200, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AT LAW

Plaintiff K. M. by her mother and next friend Brandi McGuire, by and through her

attorneys, Katz, Huntoon & Fieweger, P.C., and for her Complaint at Law against the defendant,

Sherrard Community Unit School District Number 200, states:

1. Brandi McGuire (hereinafter "Brandi" or "plaintiff") is and at all material times hereto

   was a resident of Coyne Center, Rock Island County, is a resident of the State of Illinois

   and is the mother of nominal plaintiff, K. M. (hereinafter "KM"), a minor who is a

   resident of Rock Island County, Illinois.

2. Sherrard Community Unit School District Number 200 (hereinafter "CUSD" or

   "defendant") is a public entity as that term is defined in 42 U.S.C. § 12131 with its

   principal place of business in Sherrard, Mercer County, State of Illinois.

3. This court has subject matter jurisdiction over this cause of action pursuant to 42 U.S.C. §

   12101 et seq. and 28 U.S.C. § 1331.

2

4. Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that a substantial part of the events giving rise to this cause of action took place within the Central District of Illinois, including Rock Island County and Mercer County.

5. KM suffers from (and suffered from at all times relevant hereto) epilepsy and/or a seizure disorder and is a person with a "disability" as that term is defined by 42 U.S.C. § 12102 in that she has a physical impairment that substantially limits one or more major life activities or is regarded as having such an impairment.

6. KM's epilepsy\seizure disorder causes KM to suffer from seizures, however, KM's seizures typically include lip smacking or "zoning out" and staring off into the distance rather than obvious convulsions.

7. KM's seizures are, at least in part, directly linked to stress and anxiety, meaning that when KM becomes extremely stressed or anxious she has an increased risk of suffering from a seizure.

8. During a seizure KM may stop breathing and after a seizure KM may suffer from memory loss.

9. Beginning in the 2013-2014 academic year KM attended second grade at Sherrard Elementary School, a school within CUSD.

10. On or about January 2014, KM became aware that she was being paired with a service dog named Jasper through Disability Assistance Dogs, an organization that trains service dogs.

11. Jasper is trained to alert and get assistance for KM when she is having a seizure as well as brace KM when she feels dizzy from her medications and needs to lean on a support.

3

12. Jasper is a "service animal" as that term is defined in 28 C.F.R. § 36.104 in that he is trained to do work or perform tasks for an individual with a disability (KM).

13. In addition to the work and tasks Jasper is trained to do, Jasper also helps relieve stress and anxiety for KM which can reduce the frequency of her seizures.

14. Jasper is a trained service animal and wears a blue vest identifying himself as a service animal, he has been certified as a service animal by Disability Assistance Dogs, and he has been certified for public access by Disability Assistance Dogs.

15. On or about January 13, 2014 Jasper began accompanying KM to school; CUSD held an assembly to teach the students and staff at CUSD how to interact with Jasper.

16. On or about January 16, 2014, Victoria Connelly, the principal at Sherrard Elementary School and employee of CUSD told Brandi that the school would make an adult available to walk KM and Jasper from the bus each morning.

17. On or about January 22, 2014 the children in KM's second grade class at Sherrard Elementary School were lining up to walk from one classroom to another.

18. The second grade teacher, Connie Brown was in the back of the line and the second grade paraprofessional, Sheryl Shulte was in the front of the line to lead the students to the other room; KM and Jasper were also in the front of the line.

19. Another employee of CUSD, the art teacher in the district, abruptly swung the door open in front of Jasper and KM.

20. The art teacher is and at all material times hereto was the president and head trainer of Quad Cities Canine Assistance Network, Inc. and trains service, therapy, and facility

4

dogs; the art teacher is also wheelchair bound and was at all times material to this cause
of action.

21. The art teacher on more than one occasion took a dog she was actively training, but that
had not yet been fully trained, to school.

22. On or about January 22, 2014, the art teacher had a German shepherd dog she was in the
process of training with her in her art classroom.

23. When the art teacher opened the door to her classroom in front of KM and Jasper, the dog
the art teacher was training began to bark from inside the classroom.

24. In response to the dog in training's bark, Jasper let out one to two barks and began to
walk in the classroom; however, KM took hold of Jasper's leash and told him "no bark"
which caused Jasper to stop barking while the dog in training in the classroom continued
to bark.

25. The art teacher then yelled down the hallway that Jasper's actions were not appropriate
for a service dog; KM's teacher, paraprofessional, and KM herself heard the art teacher's
comments.

26. Late that day, the art teacher told KM that Jasper would not be allowed in her classroom;
this upset KM and gave her anxiety.

27. That evening Victoria Connelly, the Principal at Sherrard Elementary School contacted
Brandi on behalf of CUSD about the incident and Brandi explained that Jasper had been
trained for public access.

28. That evening, due to the stress of the incident with the art teacher, KM suffered a seizure,
which Jasper alerted to.

5

29. On or about January 23, 2014, after being informed that Jasper would not be allowed in the art teacher's classroom, Brandi chose to remove KM from the art class to try to minimize the interaction between KM, Jasper, and the art teacher and to reduce KM's stress and anxiety around the art teacher.

30. On or about February 10, 2014 KM and Jasper got off the bus at Sherrard Elementary School and, despite the previous representation by Victoria Connelly, no adult accompanied them.

31. When Jasper and KM entered the school, the art teacher wheeled around a corner abruptly and startled both KM and Jasper causing Jasper to let out a bark; KM immediately controlled Jasper and instructed him not to bark.

32. The incident caused KM anxiety and stress.

33. After school that evening Victoria Connelly informed Brandi that Jasper would not be allowed in school until after a meeting with Interim Superintendent Dick Stolz at the CUSD unit office the following morning.

34. That night KM suffered from a seizure which Jasper alerted to.

35. On or about February 11, 2014, Brandi, KM, and Jasper met with Interim Superintendent Dick Stolz who confirmed that KM and Jasper could return to school and instructed Victoria Connelly to update KM's IEP to include a full-time adult aid.

36. Later that evening, Victoria Connelly called Brandi to inform her that when Victoria Connelly explained the situation to the art teacher she threatened to call the police on KM and Jasper; Victoria Connelly recommended keeping KM and Jasper home from school the following day.

6

37. Brandi ignored Victoria Connelly's recommendation and sent KM and Jasper to school.

38. On or about February 12, 2014, KM and Jasper exited the bus with Victoria Connelly and an aide.

39. As KM, Jasper, Victoria Connelly, and the aide approached the front doors to the school, they became aware that the art teacher was waiting inside the doors and chose to go around the school to the side in an attempt to avoid contact with the art teacher.

40. When the group entered the building from the side entrance, the art teacher came down the hallway towards them causing Victoria Connelly to pull KM and Jasper into a classroom to avoid a confrontation with the art teacher.

41. Upon information and belief, the art teacher and other members of the staff at Sherrard Elementary School had discussed that, if KM and Jasper did not go into the school through the main doors on February 12, 2014, the art teacher would go down the hallway and pretend to need to discuss an issue with them in order to confront KM and Jasper.

42. KM was frightened and anxious as a result of this interaction and had a seizure that night to which Jasper alerted.

43. On or about February 13, 2014 Victoria Connelly once again informed Brandi that KM and Jasper should not come to school Monday morning as they were being required to meet with Interim Superintendent Dick Stolz before Jasper could be allowed back in school.

44. Brandi subsequently removed KM from school within CUSD.

45. A public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability under 28 C.F.R. § 35.136.

7

46. CUSD, by its employees the art teacher, the principal, Victoria Connelly, and the superintendent, Dick Stolz violated 42 U.S.C. §12132 in one or more of the following ways:

    a. caused KM to be excluded from participation in classes;

    b. caused KM to be denied the benefits of the services, programs, or activities of CUSD;

    c. caused KM to be subjected to discrimination by CUSD as a result of her disability and the assistance she required for her disability;

    d. Denied her a public accommodation based on her use of a service animal; and

    e. Failed to change its policies and procedures to accommodate a bona fide service animal.

47. As a result of the repeated harassment and discrimination by CUSD through its employees, KM was moved to a private school at great expense to her family.

48. KM is currently pursuing her rights under the Individuals with Disabilities Education Act (IDEA) 20 U.S.C. § 1411 et seq. through a due process hearing in front of an impartial hearing officer.

49. As a result of the stress and anxiety associated with the repeated confrontations with the art teacher as well as the removal from school to meet with the superintendent, KM has suffered both emotional distress and seizures.

50. KM has been physically harmed by the actions of employees and staff at CUSD as the stress and anxiety they caused to the child were a direct and proximate cause of her seizures during that time period.

8

51. This cause of action is being brought in addition to the IDEA cause of action and is specifically requesting relief that is outside the remedies available under the IDEA, namely emotional distress damages and damages for physical harm.

52. Plaintiff is entitled to and seeks attorney's fees pursuant to 42 U.S.C. § 12133.

WHEREFORE, for the reasons stated herein, plaintiff KM, a minor by her mother and next friend, Brandi McGuire, request this court enter judgment in her favor and against defendant Sherrard Community Unit School District Number 200 in an amount that is just and reasonable for her physical harm and emotional distress damages, plus the costs of this action, including reasonable attorney's fees, and expert witness.

**PLAINTIFF DEMANDS A JURY OF 12 PERSONS**

K. M., a minor by her
Parent and next friend BRANDI
McGuire, Plaintiff


By: ___s/ John F. Doak____
John F. Doak
Elizabeth A. George
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
Moline, IL 61265-7126
Telephone:  309-797-3000
Fax:  309-797-3330
E-mail:  jdoak@katzlawfirm.com
        egeorge@katzlawfirm.com

s:\JFD\McGuire\ComplaintADA